IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                    )
RICKY E. JACKSON,                   )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Civil Action No. 07-1063
                                    )
PETE GEREN,                         )
                                    )
            Defendant.              )
                                    )
```

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment.  Plaintiff's Amended Complaint alleges that Defendant Pete Geren, Secretary of the Army, discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.  In particular, Plaintiff alleges that his direct supervisor subjected him to disparate treatment and a hostile work environment based on his race, and retaliation based on prior protected activity.  When a motion for summary judgment is made, the evidence presented must be viewed in the light most favorable to the non-moving party.  See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc). We review the facts with this principle in mind.

During the time period relevant to this action, Plaintiff, a self-described "black" man, was employed by the United States

Army as a GS-9 Assistant Sports Director in the Sport and Fitness
Branch, Community Recreation Division, 22nd Area Support Group
(ASG), in Vicenza, Italy.  Plaintiff was responsible for
coordinating community and intramural sports for Army personnel
by setting up and marketing sporting events, ensuring that
athletic facilities were ready for use, and completing force
protection paperwork for off-post sporting events.  Plaintiff's
direct supervisor was Elizabeth Upton, the GS-11 Chief of the
Sports and Fitness Branch in Vicenza.

According to Plaintiff's Amended Complaint, Upton engaged in
"discriminating, reprising, and harassing Plaintiff" from March
2004 to May 2004.  First, Plaintiff alleges that Upton denied him
training-related opportunities on three occasions.  On April 7,
2004, Upton denied Plaintiff forty-five minutes of training on
fitness equipment, which Plaintiff contends was a violation of
U.S. Army Europe Regulation (USAREUR) 215-7.  On April 15, 2004,
Upton allowed a white co-worker, Chaz Ingram, to attend
"Information Management Officer" ("IMO") training, while refusing
Plaintiff the opportunity to attend.  On April 21, 2004, Upton
selected Ingram, instead of Plaintiff, to conduct a "Summer
Safety Training" for employees in their division.

Second, Plaintiff alleges that Upton twice failed to
compensate him for overtime he had earned.  Upton denied
Plaintiff pay for fifty-seven overtime hours he had accumulated

2

from April 26 to May 21, 2004. Upton also denied Plaintiff pay for five hours of overtime he had accumulated on May 13, 2004.

Third, Plaintiff alleges that Upton subjected him to a hostile work environment by admonishing him "about an incident, and for a filing a prior EEO complaint against [Upton]"; requiring him to pick up a flier for a bulletin board when other employees did not have to do the same; sending him and his co-workers an e-mail which he viewed as harassing and offensive; refusing to meet with him to discuss added duties during his midpoint review; and counseling him after a softball field failed a safety inspection.

Plaintiff's protected activity included two formal administrative EEO complaints involving Upton. The first complaint was filed in July 2003, before the incidents alleged in this case. This complaint resulted in a Fact-Finding Conference in September 2003, in which Upton participated as a management witness. The second complaint, which constitutes the basis for this action, was filed in June 2004. The EEOC consolidated the two complaints and, thereafter, Administrative Judge ("AJ") Varice E. Henry granted summary judgment in favor of the Army. The EEOC's Office of Federal Operations ("OFO") upheld the AJ's decision on direct appeal and upon Plaintiff's request for reconsideration. Plaintiff thereafter brought this suit.

Summary judgment is appropriate where there is no genuine

issue as to any material fact. See Fed. R. Civ. P. 56(c).  Once a
motion for summary judgment is properly made and supported, the
opposing party has the burden of showing that a genuine dispute
exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586-87 (1986).  A material fact in dispute appears
when its existence or non-existence could lead a jury to
different outcomes.  See Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  A genuine issue exists when there is
sufficient evidence on which a reasonable jury could return a
verdict in favor of the non-moving party.  See id.  Mere
speculation by the non-moving party "cannot create a genuine
issue of material fact."  Beale v. Hardy, 769 F.2d 213, 214 (4th
Cir. 1985); see also Ash v. United Parcel Serv., Inc., 800 F.2d
409, 411-12 (4th Cir. 1986).  Summary judgment is appropriate
when, after discovery, a party has failed to make a "showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).

Plaintiff's Amended Complaint alleges that he was subjected
to disparate treatment, a hostile work environment, and
retaliation in violation of his rights under Title VII.  Absent
direct evidence of discrimination or retaliation, Title VII
claims are analyzed under the McDonnell Douglas burden-shifting

4

framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792,
802-805 (1973).  Under this framework, a plaintiff may establish
a prima facie case of unlawful discrimination via disparate
treatment by showing that (1) he is a member of a protected
class, (2) he suffered an adverse employment action, (3) he was
performing his job duties at a level that met his employer's
legitimate expectations at the time of the adverse action, and
(4) similarly-situated employees outside of his protected class
received more favorable treatment.  See Holland v. Washington
Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007); White v. BFI
Waste Services, LLC, 375 F.3d 288, 295 (4th Cir. 2004).

     If Plaintiff is able to establish a prima facie case of
discrimination, the burden shifts to Defendant, who must
"articulate some legitimate, nondiscriminatory reason" for the
adverse employment action suffered by the employee.  Burdine, 450
U.S. at 253 (quoting McDonnell Douglas, 411 U.S. at 802).  If
Defendant is able to proffer evidence showing a legitimate reason
for the adverse employment action, the burden shifts back to
Plaintiff to show that Defendant's articulated reasons are mere
pretext for unlawful discrimination.  Id.

     Regardless of whether Plaintiff proceeds using direct
evidence or the McDonnell Douglas framework of evidence, "the
ultimate question in every employment discrimination case
involving a claim of disparate treatment is whether the plaintiff

was the victim of intentional discrimination." Hill v. Lockheed
Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004)
(en banc)(internal quotations omitted).  "To demonstrate such an
intent to discriminate, . . . [a plaintiff] must produce
sufficient evidence upon which one could find that the protected
trait actually motivated the employer's decision." Id. (internal
quotations omitted).

Plaintiff alleges that Upton intentionally discriminated
against him by denying him training-related opportunities on
three occasions.  First, Upton denied Plaintiff forty-five
minutes of training on fitness equipment, which Plaintiff alleges
was in violation of USAREUR Regulation 215-7.  This regulation
states that "[s]taff members will be allowed 45 minutes during
their 8-hour workshift for training and use of equipment."  Upton
sought clarification from her own supervisors as to the meaning
of this regulation and was instructed that it was intended to
facilitate on-the-job training, not personal fitness.  Upton then
created a worksheet whereby her employees would note what
machinery they used during their forty-five minutes, what they
learned, and whether they worked with customers.  Upton required
her employees to complete this worksheet in order to qualify
their exercise as "training and use" under the regulation.  After
Upton instituted this system, none of her employees opted to use
the forty-five minutes of training.

Second, Upton denied Plaintiff the opportunity to attend IMO training while allowing Ingram, a white co-worker of Plaintiff's, to attend.  The purpose of this IMO training was to train someone to be an alternate IMO, as one of Plaintiff's other co-workers had already been trained as an IMO.  Plaintiff has admitted that this training "was not job related to me" and that Ingram's duties, unlike his own, were primarily clerical in nature.  Furthermore, Plaintiff had already told Upton that he was feeling stressed and overworked.  Upton therefore decided that Ingram was a better choice to attend the IMO training and become the IMO alternate.

Third, Upton denied Plaintiff the opportunity to conduct "Summer Safety Training" for employees in their division.  Plaintiff complained that this training gave Ingram "more visibility and credibility" than Plaintiff, who was more senior than Ingram.  The "Summer Safety Training" coordinator was responsible for passing out a sign-up sheet to attendees and playing a video discussing safety issues.  Jackson admitted that this training was not part of his typical duties.  Upton assigned Ingram to conduct the training because it was a purely administrative task and Plaintiff, a higher graded employee, had already told Upton that he felt overworked.

Plaintiff's claim of unlawful discrimination based on these three training-related incidents must fail.  Two out of the three

7

incidents — the denial of daily exercise and the decision not to
select Plaintiff to conduct Summer Safety Training — do not
constitute adverse employment actions. An adverse action is a
discriminatory act which "adversely affect[s] the terms,
conditions, or benefits of the plaintiff's employment." James v.
Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)
(internal quotations omitted). Title VII was not intended to
remedy "trivial discomforts endemic to employment," Boone v.
Goldin, 178 F.3d 253, 256 (4th Cir. 1999). Rather, the action
must result in a "significant change in employment status, such
as hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing a
significant change in benefits." Burlington Industries, Inc. v.
Ellerth, 524 U.S. 742, 761 (1998). The Fourth Circuit has held
that the action must have some "significant detrimental effect"
on the plaintiff's employment. See Boone, 178 F.3d at 256.

Neither of these two training-related incidents had a
"significant detrimental effect" on Plaintiff's employment.
Denying Plaintiff the opportunity to exercise for forty-five
minutes during the work day, even if true, did not have a
significant detrimental effect on Plaintiff's employment. In
fact, the evidence shows that Plaintiff was not denied the
opportunity to exercise daily, but was merely required to
complete a worksheet to do so. This exercise policy did not

constitute an adverse employment action.  Additionally, Upton's decision to select Ingram, instead of Plaintiff, to conduct Summer Safety Training did not constitute an adverse employment action.  Conducting this type of session, which involved no more than passing out an attendance sheet and turning on a training video, was not part of Plaintiff's typical duties.  Upton's decision not to select Plaintiff for this task did not have a significant detrimental effect on his employment.

With regard to the denial of IMO training, Plaintiff must establish a more particularized prima facie case by showing that (1) he is a member of a protected class, (2) Defendant provided training to its employees, (3) Plaintiff was eligible for the training, and (4) Plaintiff was not provided training under circumstances giving rise to an inference of discrimination. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649-50 (4th Cir. 2002).[1]  In this case, Plaintiff has failed to produce evidence indicating that Upton's decision to select Ingram, instead of Plaintiff, to attend IMO training was made under circumstances giving rise to an inference of discrimination.

_____

[1] This particularized prima facie case does not apply to the other two training-related incidents – the denial of daily exercise time and the decision not to select Plaintiff to conduct Summer Safety Training – because these two incidents are not denial-of-training claims.  The first incident involves the denial of daily exercise time and the second involves the denial of an opportunity to conduct, not take part in, a training session.

9

Plaintiff admitted that this type of training was not "job related" to him and that Ingram's duties, unlike his own, were primarily clerical in nature. When combined with the fact that Plaintiff had already told Upton that he was feeling overworked, these circumstances do not give rise to an inference of discrimination.

Even if Plaintiff were able to establish a prima facie case of discrimination with regard to these training-related incidents, Defendant has articulated legitimate, non-discriminatory reasons for its actions, which Plaintiff has failed to rebut as pretextual. Upton instituted the daily exercise worksheet to ensure that her employees were using their daily exercise sessions to learn more about the equipment and to help customers, thereby effectuating the very purpose of the regulation. Additionally, Upton selected Ingram for the IMO training and Summer Safety Training because Plaintiff had already complained of feeling overworked and Upton thought that these tasks were better suited for Ingram, whose responsibilities were generally more clerical in nature. Thus, Plaintiff's training-related claims must fail.

Next, Plaintiff alleges that Defendant discriminated against him on two occasions by denying him overtime compensation. Upton's decision to deny Plaintiff overtime compensation resulted from a command-wide directive to reduce the amount of overtime

10

and compensatory time that employees were taking.  Upton
implemented this directive by notifying her employees, including
Plaintiff, that they would no longer be permitted to receive
overtime or compensatory time.  Instead, if an employee had to
work on an evening or weekend, that employee could reduce his or
her weekday hours by the amount of evening or weekend hours
worked in the same pay period.  The employees were required to
notify Upton in advance if they intended to adjust their hours in
this manner.

Plaintiff has failed to establish a <u>prima facie</u> case of
discrimination with regard to the overtime-related claims because
Plaintiff has failed to demonstrate that "similarly-situated
employees outside the protected class received more favorable
treatment."  <u>White</u>, 375 F.3d at 295; <u>see also</u> <u>Sterling v. Tenet</u>,
416 F.3d 338, 345 (4th Cir. 2005)(plaintiff must show that "he
was treated worse than similarly situated employees of other
races").  Plaintiff has failed to identify any similarly-situated
employee who received more favorable treatment from Upton
concerning overtime compensation.  It appears that Plaintiff
cannot do so, as the evidence indicates that Upton applied her
policy of denying overtime compensation while allowing her entire
staff to reduce their weekday hours by the amount of overtime
worked.

Even if Plaintiff could establish a <u>prima facie</u> case,

11

Defendant has produced legitimate, non-discriminatory reasons for its denial of Plaintiff's overtime compensation requests. Upton's policy of denying overtime compensation while allowing adjusted schedules resulted from an Army-wide effort to reduce labor costs, which is itself a legitimate reason for Defendant's actions.  Furthermore, Defendant has produced non-discriminatory reasons for its actions in relation to both of the specific overtime-related incidents in Plaintiff's complaint.  With regard to Plaintiff's hours worked on May 13, 2004, Plaintiff failed to gain any adjusted hours because he failed to notify Upton in advance that he was planning on adjusting his hours.  With regard to Plaintiff's hours worked from April 26 to May 21, 2004, Plaintiff was not allowed to adjust his work week hours because the adjustment would have been outside the pay period in which he earned the hours.  In this instance, Upton offered to allow Plaintiff to take one of the next three days off, rather than the following week.  Thus, Plaintiff's overtime-related claims must fail because Defendant has produced legitimate, non-discriminatory reasons for its actions, and Plaintiff has failed to produce evidence of pretext.

Plaintiff also alleges that Defendant's training and overtime-related actions constituted unlawful retaliation.  Like discrimination claims, retaliation claims are subject to the McDonnell Douglas burden shifting framework.  Laughlin v. Metro.

<u>Washington Airports Auth.</u>, 149 F.3d 253, 258 (4th Cir. 1998). To establish a <u>prima facie</u> case of retaliation, Plaintiff must show that (1) he engaged in protected activity, (2) his employer took an adverse action against him, and (3) a causal relationship existed between his protected activity and the employer's adverse action. <u>Baqir v. Principi</u>, 434 F.3d 733, 747 (4th Cir. 2006). If Plaintiff establishes a <u>prima facie</u> case of retaliation, the burden shifts to his employer to articulate non-retaliatory reasons for its actions.

Plaintiff's training-related retaliation claims must fail because, for the reasons stated above, Defendant took no adverse actions against him.[2]  Plaintiff's overtime-related retaliation claims must also fail because, for the reasons stated above, Defendant has produced legitimate, non-retaliatory reasons for its actions.

Finally, Plaintiff alleges that Defendant subjected him to a hostile work environment based on his race. In order to establish a hostile work environment claim, Plaintiff must show that he suffered workplace harassment that was "(1) unwelcome;

---

[2] Plaintiff's retaliation claims also fail under the more permissive "materially adverse" standard of <u>Burlington Northern</u>. <u>See Burlington Northern & Sante Fe Railway Co. v. White</u>, 548 U.S. 53 (2006) (holding that private sector employees who allege retaliation under 42 U.S.C. § 2000e-3(a) need not show that they suffered an adverse employment action). The actions taken by Defendant are not actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 2412 (internal quotations omitted).

(2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004). Plaintiff has failed to demonstrate that he was subjected to severe or pervasive harassment, or that he was subjected to an abusive atmosphere. First, Upton's alleged admonishment "about an incident, and for a filing a prior EEO complaint against [Upton]," is not supported by any evidence as Plaintiff has failed to provide any specific information about any such incident. Second, the remaining allegedly hostile incidents included: Upton asking Plaintiff to pick up bulletin board fliers; Upton sending Plaintiff and his co-workers an e-mail detailing his responsibilities for an upcoming clinic by using the language of "you will need to . . ."; Upton refusing to seek Plaintiff's input when amending his performance evaluation before his midpoint review; and Upton's counseling of Plaintiff after a failed safety inspection of a softball field. These incidents are facially race neutral and are not sufficiently severe or pervasive to support a hostile work environment claim.

Therefore, for the foregoing reasons, Defendant is entitled to summary judgment. An appropriate order shall issue.

14

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August __19__, 2008

15